Main Document Page 1 of 44

Attorney or Party Name, Address, Telephone & FAX Numbers, and California State Bar Number
Kirk Laron SBN 262817
RoseAnn Frazee SBN 262516
123 N. Lake Avenue, Suite 200
Pasadena, CA 91101
(626) 744-0263
(626) 744-0548 - fax

☐ *Individual appearing without counsel*
☒ *Attorney for:* RESPONDENT

FOR COURT USE ONLY

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

In re:
PAMELA MILLER RIDLEY,

Debtor(s).

CHAPTER: 11

CASE NO.: 1:09-bk-23305

DATE: 2/2/10
TIME: 10:00 AM
CTRM: 303
FLOOR: 3RD

# RESPONSE TO MOTION FOR ORDER TO TERMINATE, ANNUL, MODIFY, OR CONDITION THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 AND DECLARATION(S) IN SUPPORT

**(MOVANT: ENTRUST ADMINISTRATION)**

**(RESPONDENT: ☒ Debtor ☐ Trustee ☐ Other: _____)**

***GENERAL NOTE***: *A request for additional time is* ***not*** *usually an adequate response in opposition to the Motion. This Response and supporting declaration(s) and other admissible evidence must be filed with the Court and served pursuant to the Local Bankruptcy Rules.*

1. ☐ **NON-OPPOSITION:** Notice is hereby given that the Respondent does not oppose the granting of the Motion.

***NOTE***: *If you do not oppose the Motion, there is no need to appear at the hearing scheduled in the Motion.*

2. ☐ **LIMITED OPPOSITION – APPEARANCE REQUIRED:** Respondent opposes the Motion only to the extent that it seeks immediate relief from stay. Respondent requests that no lock out, foreclosure, or repossession shall take place before *(specify date)*:

This form is OPTIONAL. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009

**F 4001-1M.RES**

American LegalNet, Inc.
www.FormsWorkflow.com

Response to Motion for Relief from Stay - *Page 2 of* _____ **F 4001-1M.RES**

| In re (SHORT TITLE)<br>PAMELA MILLER RIDLEY<br>Debtor(s). | CHAPTER: 11<br>CASE NO.: 1:09-bk-23305 |
|---|---|

3. ☒ **OPPOSITION – APPEARANCE REQUIRED:** Notice is hereby given that the Respondent opposes the granting of the Motion for the reasons set forth below.

a. Respondent disputes the allegations/evidence contained in the Motion. As shown in the Declaration(s) filed with this Response:

☒ The value of the Property is $ 3,750,000.00, based upon (*specify*): Appraisal submitted by Debtor (Exhibit A of Opposition)

☒ Total amount of debt (loans) on the Property is $ 2,254,659.80

☐ More payments have been made to Movant than the Motion has accounted for. True and correct copies of canceled checks proving the payments that have been made are attached as Exhibit _____.

☒ The Property is necessary for an effective reorganization. Respondent has filed or intends to file a plan requiring the Property. A true and correct copy of the Plan is attached as Exhibit _____.

☒ The Property is insured. A true and correct copy of the policy currently in effect is attached as Exhibit _____.

☐ The Movant's description of the status of the unlawful detainer proceeding is not accurate. See attached Declaration for Respondent's evidence.

☒ Respondent denies that this bankruptcy was filed in bad faith or improperly. See attached Declaration containing Respondent's evidence.

☒ Debtor would be prejudiced if the lawsuit or administrative proceeding is allowed to continue outside the bankruptcy court. See attached Declaration regarding Respondent's contentions.

☐ Service of the Motion: ☐ Not all parties were served ☐ Insufficient notice of the hearing

☐ Incorrect address used for *(specify)* ______________________

☐ Other *(specify)*:

b. Respondent asserts:

☐ Case has been converted from Chapter _____ to Chapter _____.

☐ All postpetition arrears will be cured by the hearing date.

☒ The Debtor has equity in the Property in the amount of $1,495,340.20.

☒ Movant has an equity cushion of $ 1,495,340.20 which is sufficient to provide adequate protection.

☒ The Property is necessary for an effective reorganization because *(specify reasons why)*: the primary reason for the Chapter 11 Bankruptcy is to allow time to make up arrearages in order to save primary residence, which is the subject of this dispute.

☒ The Motion should be denied because *(specify)*: Movant's appraisal is grossly inaccurate.

*(Continued on next page)*

This form is OPTIONAL. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009 **F 4001-1M.RES**

American LegalNet, Inc. www.FormsWorkflow.com

Main Document Page 3 of 44

Response to Motion for Relief from Stay - *Page 3 of* _____ **F 4001-1M.RES**

| In re (SHORT TITLE)<br>PAMELA MILLER RIDLEY<br>Debtor(s). | CHAPTER: 11<br>CASE NO.: 1:09-bk-23305 |
|---|---|

4. **EVIDENCE IN SUPPORT OF RESPONSE AND SUPPORTING PAPERS:**

***NOTE RE SUPPORTING PAPERS:*** *Declarations in opposition to the Motion* ***MUST*** *be attached hereto. Any individual signing a declaration must have personal knowledge of the facts stated in it and should attach any supporting documents, if possible. You may attach a Memorandum of Points and Authorities if you desire, but it is not required.*

***NOTE RE SERVICE OF RESPONSE AND SUPPORTING PAPERS:*** *Pursuant to the Local Bankruptcy Rules, you must file with the Bankruptcy Court Clerk this completed Response along with supporting declaration(s) signed under penalty of perjury, AND also serve a copy of the Response and declaration(s) on the Movant's attorney (or Movant, if no attorney), the Bankruptcy Trustee, the United States Trustee, and all other parties to the Motion.*

Pursuant to the Local Bankruptcy Rules, attached hereto are the following papers in support of this Response:

- [x] Declaration by Debtor
- [ ] Declaration by Trustee
- [ ] Declaration by Appraiser
- [ ] Other *(specify)*:
- [ ] Declaration by Debtor's Attorney
- [ ] Declaration by Trustee's Attorney
- [x] Memorandum of Points and Authorities *(optional)*

Dated: 1/25/2010

Respectfully submitted,

Kirk Laron
*Respondent's Name*

Law Office of Frazee/ Laron
*Law Firm Name (if applicable)*

By: [signature]
*Signature*

Name: ____________________
*Attorney for Respondent or Pro Se Respondent*

This form is OPTIONAL. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009 **F 4001-1M.RES**

American LegalNet, Inc.
www.FormsWorkflow.com

Kirk Laron (State Bar No. 262817)
kirk@frazeelaron.com
LAW OFFICES OF FRAZEE/ LARON
123 N. Lake Avenue, Suite 200
Pasadena, CA 91101
Telephone: (626) 744-0263
Facsimile: (626) 744-0548

Proposed Attorneys for Debtor in Possession

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA – SAN FERNANDO VALLEY DIVISION

| In re:<br><br>Pamela Miller Ridley,<br><br>Debtor and Debtor in Possession. | CASE NO: 1:09-bk-23305-GM<br><br>Chapter: 11<br><br>**OPPOSITION TO "MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. §362 (REAL PROPERTY)" OF ENTRUST ADMINISTRATION, INC.; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION(S) AND EXHIBIT(S) IN SUPPORT THEREOF**<br><br>**[Declaration Of Pamela Ridley, filed concurrently]**<br><br>Date: February 2nd, 2010<br>Time: 10:00 a.m.<br>Place: Courtroom 303<br>United States Bankruptcy Court<br>21041 Burbank Boulevard<br>Woodland Hills, California |
|---|---|

**TO THE HONORABLE GERALDINE MUND, UNITED STATES BANKRUPTCY JUDGE:**

Pamela Ridley, the debtor and debtor in possession in the above-captioned case, submits the following "Opposition To 'Motion For Relief From The Automatic Stay Under 11 U.S.C. §362 (Real Property)' Of Entrust Administration, Inc."

The "Motion For Relief From The Automatic Stay Under 11 U.S.C. §362 (Real Property), filed by Entrust Administration, Inc. ("Entrust") should be denied because:

a. There is a substantial equity cushion in the primary residential real estate of debtor located at 28860 Selfridge Drive, Malibu, CA 90265 ("Selfridge Property") that collateralizes the Entrust third priority trust deed loan; and

b. The appraisal submitted by Entrust grossly underestimates the actual square footage of the Selfridge Property, describes such property as a one-story residence when it is in actuality a three-story residence, and fails to account for other actual conditions of the property that are obvious and unaccounted for in the property appraisal submitted by Entrust.

Dated: January 20, 2010

LAW OFFICES OF FRAZEE/ LARON

By: [signature]

KIRK LARON
[Proposed] Attorney for
PAMELA RIDLEY
Debtor and Debtor-in-Possession

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

In its "Motion For (A) Relief From The Automatic Stay Under 11 U.S.C. §362 (Real Property), Entrust Administration, Inc. ("Entrust") is attempting to obtain relief from the automatic stay in order to foreclose on the property located at 28860 Selfridge Drive, Malibu, CA 90265 (the "Selfridge Property").

Entrust requests relief under 11 U.S.C. 362(d)(1) and (2). The Stay Relief Motion should be denied under both of these provisions because Pamela Ridley has a substantial amount of equity in the Selfridge Property. Thus, relief under 11 U.S.C. 362(d)(1) should be denied because Entrust's interest is adequately protected by an equity cushion and relief under 11 U.S.C. 362(d)(2) should be denied because Pamela Ridley has equity in the Selfridge Property and the Selfridge Property is necessary to Pamela Ridley's effective reorganization.

## II.

## STATEMENT OF FACTS

Procedural History

Pamela Ridley filed an emergency voluntary petition for reorganization under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on October 8, 2009 (the "Petition Date").

Since the Petition Date, Pamela Ridley has continued to operate as a debtor in possession pursuant to Section 1107 of the Bankruptcy Code. On or about January 7, 2010, Entrust caused to be filed the Stay Relief Motion.

The Selfridge Property

Pamela Ridley's primary asset is that certain residential real property located at 28860 Selfridge Drive, Malibu, CA 90265 ("Selfridge Property"). Pamela Ridley's current appraisal (see Exhibit A), completed in April, 2008, values the Selfridge property at $3,750,000.00. The real property values for unique beachfront adjacent properties in this exclusive Malibu area have gone down no more than twenty percent since April 2008, and are now recovering as well. (See Declaration of Pamela Ridley, Paragraph 8). Therefore, the Selfridge Property is worth at least $3,000,000.00.

The Selfridge Property has been improved at least three times since 1960, despite the fact that Entrust quotes 1960 as the last date of improvements in their appraisal. Entrust's appraisal is based on the Los Angeles County Assessor's Records that reflect only the original home prior to the later additions. This is the case, despite the fact that Pamela Ridley provided to the lender on the Entrust debt proof of the occupancy permits for the three remodels that added 851 additional full permitted square feet at the time the loan was made (see Declaration of Pamela Ridley, Paragraph 7). Additionally, Entrust's appraisal fails to include Private Beach Rights, which have added at least $150,000 to $200,000 to the value of the Selfridge property each time it was appraised in the past. The true square footage of the Selfridge property is 3,968 square feet. The Entrust appraisal quotes the square footage of the property at 3,117 square feet. Ms. Ridley's appraisal (See Exhibit A) is quoted at 3,851 square feet, but does not account for the guest bedroom off the garage that is permitted as a bedroom despite being called a workshop in the Ridley appraisal.

The Selfridge Property Secured Liens

The principal balances of secured lien interests on the Selfridge Property are as follows:

1st Lien – Citimortgage in the amount of 1 million dollars.

2nd Lien – Specialized Loan Servicing in the amount of $500,000.

3rd Lien – Entrust (Movant) in the amount of $500,000.

First Trust Deed:

Citimortgage, Inc. is the current beneficiary under the note secured by a first trust deed on the subject property recorded on 3/4/03. The principal owed is $1,000,000. On 4/30/09 Citimortgage, Inc. recorded a Notice of Default. A Notice of Sale was subsequently recorded on 8/7/09.

Second Trust Deed:

Specialized Loan Servicing is the servicer for the holder of this note secured by the second trust deed on the subject property. The total debt owing at the time of filing of this bankruptcy case is $525, 801.21 pursuant to the proof of claim filed by Specialized.

Third Trust Deed:

Entrust Administration, Inc. is the beneficiary of this note secured by the third deed of trust. The principal amount is $500,000 with an interest rate of 12.99 percent.

The Current Value Of the Selfridge Property

On October 8, 2009, Pamela Ridley filed her bankruptcy schedules, including Schedule A, in which she conservatively valued the Selfridge Property at $2,800,000.00.

Debtor includes an appraisal (Exhibit A) from April 1, 2008, which values the Selfridge Property at $3,750,000.00. According to Ms. Ridley (See Declaration, Paragraph 7), Entrust Administration was previously provided this appraisal. What is important to note is that on "Page

1 of 21" of this appraisal, the general description notes accurately that the property has three stories. In the general description notes of Entrust's appraisal (see Exhibit B), the Selfridge Property is described as only one-story. Additionally, the title of this page is "Exterior-Only Appraisal Report", which suggests that the appraiser looked at the property from the exterior. Either the appraiser did not do this, or the appraiser errored in noting the number of stories of the home, even though they are clearly visible from the street.

Entrust's appraisal report (see Exhibit B) describes the property as only containing 3,117 square feet. Debtor's appraisal describes the property as containing 3,851 square feet. In actuality, the property contains 3,968 square feet (see Declaration of Pamela Ridley, Paragraph 6) as the Debtor's appraisal does not account for a bedroom that is permitted as a bedroom, but is described as a workshop in her appraisal, which excludes the square footage which is the difference between the 3,851 and 3,968 square feet. Entrust's appraisal is grossly inaccurate in this regard.

///

III.

LEGAL ANALYSIS

A. Entrust Should Not Be Granted Relief From the Automatic Stay Pursuant To 11 U.S.C. §362(d)(1)

The Stay Relief Motion argues that Entrust should be granted relief from the automatic stay pursuant to 11 U.S.C. §362(d)(1) because Entrust's interest in the Selfridge Property is not adequately protected. Entrust argues that its interest in the Selfridge Property is not adequately protected because there is not an adequate equity cushion in the Selfridge Property and because the fair market value of the Selfridge Property is declining.

1. The Stay Relief Motion Should Be Denied Because Entrust Is Adequately Protected By A Substantial Equity Cushion

Although the existence of an equity cushion is not specifically mentioned in §361, it is the classic form of protection for a secured debt justifying the restraint of lien enforcement by a bankruptcy court. [In re Mellor, 734 F.2d 1396, 1400 (9th Cir. 1984)]

A 20% cushion has been held to be an adequate protection for a secured creditor. [Id. at 1401] The purpose of adequate protection under §361 is to insure that the secured creditor receives in value essentially what he bargained for, not a windfall. [Id.]

a. Entrust's Appraisal Of The Selfridge Property Is Not Accurate

There are several glaring material issues with the appraisal report. First, the appraisal report lists the square footage as 3,117 square feet, when it is in fact 3,968 square feet. If the approximation of $800.00 per square foot price is applied from the Entrust appraisal, the missing square footage of 851 multiplied by $800 a square foot equates to $680,800.00.

Second, the Entrust appraisal is titled an Exterior-Only Inspection, but the appraisal report lists the home as a one-story residence, when it is in fact a three-story residence, which suggests that the Entrust appraisal is defective on its face (see Declaration of Pamela Ridley, Paragraph 5).

Third, the Entrust appraisal does not account for the fact that the property has over 1,500 square feet of hardwood decks surrounding the back of the house, contemporary tile floors and counters throughout the house, upgraded glass block bathrooms and more, which was completely upgraded and remodeled at the end of 1998-1999 (see Declaration of Pamela Ridley, Paragraph 5).

Fourth, the Entrust appraisal notes that the last time the Selfridge property was improved was 1960, when in fact the property has been improved at least three separate times since 1960 (see Declaration of Pamela Ridley, Paragraph 5). These improvements would result in a markedly higher price per square foot than the Entrust appraisal.

Fifth, the Entrust appraisal does not appear to take into account the private beach rights

that Malibu appraisers would have added an additional $150,000 to $200,000 for (see Declaration of Pamela Ridley, Paragraph 8)

b. The Selfridge Property Is Worth At Least $3,330,800.00

The Selfridge Property is worth approximately $3,330,800.00. When the Entrust appraisal is corrected to accurately account for the actual square footage and the private beach rights the figure of $3,330,800.00 is reached. This does not include any higher price of square footage that may result from improvements not mentioned in the Entrust appraisal.

c. Entrust Has A Substantial Equity Cushion In The Selfridge Property

Using the conservative estimate of $3,330,800.00 as the value of the Selfridge Property, then Entrust has at least a 20% equity cushion in the Selfridge Property. Twenty percent of $583,880.00, which is the figure used by Entrust in their Motion for Relief from Stay, equates to $116,776.00. If one sums together all three of the trust deed amounts owed on the Selfridge property along with taxes and the $75,000 exemption, the total amount becomes $2,254,659.80. This means that the total equity available is over $1,000,000.00, which is nearly nine times the equity required for Entrust to be adequately protected. Entrust therefore has substantially more than a 20% equity cushion in the Selfridge Property and is thus adequately protected.

2. The Stay Relief Motion Should Be Denied Because The Fair Market Value Of The Selfridge Property Is Not Declining

Entrust has provided absolutely no evidence that the fair market value of the Selfridge Property is declining.

B. Entrust Should Not Be Granted Relief From The Automatic Stay Pursuant To 11 U.S.C. §362(d)(2) Because debtor Pamela Ridley has equity In The Selfridge Property and because the

Selfridge Property Is Necessary For An Effective Reorganization. The main purpose of the Chapter 11 filing by Debtor was to preserve the equity and living within the Selfridge property, which is the primary residence of Debtor.

11 U.S.C. §362(d)(2) requires that a court grant relief from the automatic stay to allow a creditor to foreclose on property of the bankruptcy estate when the debtor does not have any equity in the property and the property is not necessary for an effective reorganization. Equity refers to the difference between the value of the property and all encumbrances upon it. [Stewart v. Gurley, 745 F.2d 1194, 1196 (9th Cir. 1984)]

1. Pamela Ridley Has Equity In The Selfridge Property

As shown above, Pamela Ridley has a substantial amount of equity in the Selfridge Property. The Selfridge Property is worth at least $3,330,800.00 and even using Entrust's calculations, there is only $2,254,659.80 in liens on the Selfridge Property at this time.

Thus, 11 U.S.C. §362(d)(2) is inapplicable to the situation at hand because Pamela Ridley has equity in the Selfridge Property, and Entrust's request for relief from the automatic stay pursuant to 11 U.S.C. §362(d)(2) should be denied.

///

IV.

CONCLUSION

Based on the foregoing arguments, Pamela Ridley requests that the Court deny Entrust's Stay Relief Motion.

Dated: January 20, 2010

LAW OFFICES OF FRAZEE/ LARON

By: ______________________

KIRK LARON
[Proposed] Attorney for
PAMELA RIDLEY

Debtor and Debtor-In-Possession

DECLARATION OF PAMELA RIDLEY

1. The following matters are true and correct and within my personal knowledge and belief, and, if called as a witness, I could and would competently testify thereto.
2. I am the debtor and debtor in possession in the Chapter 11 bankruptcy proceedings above-captioned. I filed am emergency voluntary petition for reorganization under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on October 8, 2009 (the "Petition Date"). Since the Petition Date, I have continued to operate as a debtor in possession pursuant to Section 1107 of the Bankruptcy Code.

THE SELFRIDGE PROPERTY

3. I am the owner of the property located at 28860 Selfridge Drive, Malibu, California. This property is not only my primary residence but I use the guesthouse on the property for my primary office in order to save the cost of commercial rent. Given that I have access to a conference room, mail service and other office amenities close by at no charge; this saves the estate a great deal each month.
4. The primary purpose of my Chapter 11 filing was to keep my home by allowing time for me to reorganize the debts generated by the horse business as I anticipate higher earning capacity and collection of debts owed to me in the near future.
5. The appraisal provided to the Court by Entrust is inaccurate, incomplete and erroneous. The Los Angeles County Assessor's Office's records are out of date because they fail to include the over 850 square feet of additional living space added to the house in three fully permitted remodels performed by prior owners of the house in 1962, 1964 and 1990. The 1990 remodel added a three story ultra modern wing designed by Frank Gehry's office to the front of the house that contains a full

apartment like unit, including a full bathroom and kitchen area, whose elevation fully takes advantage of our 200+ degree ocean view. The earlier additions expanded the master bedroom and added two bedrooms, an office area and an additional bathroom to the back of the house. The third story area of the house is clearly visible from the street.

6. I provided copies of all the occupancy permits showing the permitted square footage not showing on the County Accessor Records to Entrust at the time the loan was made. I have not corrected the official records because to do so risks increasing my real property taxes needlessly. I put in the proof and the application to do so at the time I purchased my home. In response, the Accessor's Office sent a notice tripling my taxes that are based on my purchase price. In settling that dispute so as to return my taxes to the proper amount based upon my purchase price, I withdrew the application to correct the records even though I could prove that my purchase price included all the square footage that was permitted and for which occupancy permits were issued before my purchase. It was not worth fighting the bureaucratic process to correct the error. So, all the square footage is properly permitted and my property taxes cover all the square footage that exists, but the public record showing only 3,117 square feet is inaccurate. Entrust's appraisal is based upon the erroneous square footage even though the lender Entrust represents was provide with copies of the permits proving the legal additions and the total square footage of 3,968.

7. Attached hereto as Exhibit "A" and incorporated herein by reference is an appraisal done for the purpose of obtaining the Entrust loan and provided to Entrust's lender in April 2008. Even that appraisal shows too little square feet, as the appraisal failed to include the guest bedroom next to the garage in his measurements despite that square footage being permitted as a bedroom that contains closets, amenities and construction

standards required in the construction of a bedroom.

8. Each time my house has been appraised by an appraiser who is familiar with the unique Point Dume neighborhood of Malibu, they have added from $150,000 to $200,000 to the final valuation to take into account that my house is one of the select number of houses on Point Dume that own a private beach with a restricted access gate. Most of the houses used in Entrust's appraisal do not have private beach ownership. Given the failure to take that into consideration, the failure to include the newer square footage, the failure to include the upgraded amenities I added, including over 1500 square feet of exterior hardwood decking, and extensive interior upgrades, the Entrust appraisal is highly inaccurate and considerably too low.

9. The real estate agents I have interviewed recently, the local real estate reports in the two Malibu papers, and the charts reported in the Los Angeles Times have all consistently stated that the market for the beach adjacent properties in Malibu bottomed out months ago and is on the rise. The maximum drop since June 2007 was less than 20%. The April 2008 appraisal I provided took place in the middle of the percentage decline, not at the beginning. At this time, the prices are edging up again. The inland properties dropped more and have not recovered as quickly but there are only a limited number of beach adjacent properties. There will be no more available in the future due to actions taken by the City of Malibu and the Coastal Commission to prevent any further subdivisions on the beach side of the highway. This scarcity has protected the market for beach adjacent properties. Further, Point Dume is one of the more desirable neighborhoods in Malibu, such that I receive dozens of solicitations every week from people wishing to buy my home for more than the indebtedness. If my cash flow does not improve soon, I may have to place the house on the market, but Entrust is not at risk as it has a more than adequate equity cushion.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 25th day of January, 2010, at Malibu, California

/s/ Pamela Ridley

Pamela Miller Ridley

-14-

OPPOSITION TO MOTION FOR RELIEF FROM AUTOMATIC STAY (CASE NO. 1:09-BK-23305-GM)

# Exhibit A

# APPRAISAL REPORT

**of**

RIDLEY

28860 SELFRIDGE DRIVE

MALIBU, CA 90265

**As Of:**

03/31/08

**Prepared For:**

MALIBU MORTGAGE
4222 LOST SPRINGS DRIVE
AGOURA HILLS, CA 91301

**Prepared By:**

JOHN WILSON
JOHN WILSON & ASSOCIATES
2899 AGOURA ROAD, #131
WESTLAKE VILLAGE, CA 91361

JOHN WILSON & ASSOCIATES
2899 AGOURA ROAD, #131
WESTLAKE VILLAGE, CA 91361

---

04/01/08

MALIBU MORTGAGE
4222 LOST SPRINGS DRIVE
AGOURA HILLS. CA 91301

RE: RIDLEY
28860 SELFRIDGE DRIVE
MALIBU, CA 90265
File No. R080146
Case No.

Dear SIRS:

In accordance with your request, I have personally inspected and prepared an appraisal report of the real property located at:

28860 SELFRIDGE DRIVE, MALIBU, CA 90265

The purpose of this appraisal is to estimate the market value of the property described in the body of this appraisal report.

Enclosed, please find the appraisal report which describes certain data gathered during our investigation of the property. The methods of approach and reasoning in the valuation of the various physical and economic factors of the subject property are contained in this report.

An inspection of the property and a study of pertinent factors, including valuation trends and an analysis of neighborhood data, led the appraiser to the conclusion that the market value, as of 03/31/08 is:

$ 3,750,000

The opinion of value expressed in this report is contingent upon the limiting conditions attached to this report.

It has been a pleasure to assist you. If I may be of further service to you in the future, please let me know.

Respectfully submitted,

Signature: ______________________

JOHN WILSON
AR027441

JOHN WILSON & ASSOCIATES

File No. R080146
CASE NO.

## Table of Contents

| Page Title | Page # |
| --- | --- |
| Dig. Signature Authentication | 1 |
| URAR Page 1 | 2 |
| URAR Page 2 | 3 |
| URAR Page 3 | 4 |
| SALES - PAST 12 MONTHS, COMPETING NEIGHBORHOOD | 5 |
| URAR Page 4 | 6 |
| URAR Page 5 | 7 |
| URAR Page 6 | 8 |
| Sketch | 9 |
| Sketch | 10 |
| Plat Map | 11 |
| Location Map | 12 |
| Sales Location Map | 13 |
| Photo Subject | 14 |
| Photo Subject Extra | 15 |
| Photo Subject Extra | 16 |
| Photo Subject Extra | 17 |
| Photo Subject Extra | 18 |
| Photo Comparables 1-2-3 | 19 |
| APPRAISER'S CERTIFICATION / LICENSE | 20 |

JOHN WILSON & ASSOCIATES

**DIGITAL SIGNATURE AUTHENTICATION**

File No. R080146
CASE NO.

Borrower RIDLEY
Property Address 28880 SELFRIDGE DRIVE
City MALIBU County LOS ANGELES State CA Zip Code 90265
Lender/Client MALIBU MORTGAGE Address 4222 LOST SPRINGS DRIVE, AGOURA HILLS, CA 91301

This report contains an electronic digital signature(s) affixed by the appraiser(s). This advanced technology has been authorized by the Appraisal Standards Board of the Appraisal Foundation as compliant under specific reporting guidelines of the Uniform Standards of Professional Appraisal Practice (USPAP). The process not only acknowledges the authenticity of a printed paper copy of the report but also the file in its state of electronic storage.

The technology encompasses transmission integrity, signature security, and record keeping for each individual appraiser that affixes the signature. The appraiser has sole personal control of affixing a signature certifying its authenticity and accepting reponsibility for content analysis, and conclusions in the report.

Signature
JOHN WILSON
AR027441

Date 04/01/08

JOHN WILSON & ASSOCIATES

File No. R080146
Case No.

# Uniform Residential Appraisal Report

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

**SUBJECT**

Property Address 28850 SELFRIDGE DRIVE City MALIBU State CA Zip Code 90265
Borrower RIDLEY Owner of Public Record RIDLEY County LOS ANGELES
Legal Description SEE PRELIMINARY TITLE REPORT
Assessor's Parcel # 4466-018-006 Tax Year 2007/08 R.E. Taxes $ 8,483.04
Neighborhood Name POINT DUME Map Reference 667/F2 Census Tract 8004.03
Occupant [X] Owner [ ] Tenant [ ] Vacant Special Assessments $ N/A [ ] PUD HOA $ N/A [ ] per year [ ] per month
Property Rights Appraised [X] Fee Simple [ ] Leasehold [ ] Other (describe) N/A
Assignment Type [ ] Purchase Transaction [X] Refinance Transaction [ ] Other (describe) N/A
Lender/Client MALIBU MORTGAGE Address 4222 LOST SPRINGS DRIVE, AGOURA HILLS, CA 91301
Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? [ ] Yes [X] No
Report data source(s) used, offerings price(s), and date(s). MLS/NDC DATA

**CONTRACT**

I [ ] did [ ] did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.

Contract Price $ Date of Contract Is the property seller the owner of public record? [ ] Yes [ ] No Data Source(s)
Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? [ ] Yes [ ] No
If Yes, report the total dollar amount and describe the items to be paid.

**NEIGHBORHOOD**

**Note: Race and the racial composition of the neighborhood are not appraisal factors.**

| Neighborhood Characteristics | | | | One-Unit Housing Trends | | | | One-Unit Housing | | | Present Land Use % | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Location | [ ] Urban | [X] Suburban | [ ] Rural | Property Values | [ ] Increasing | [X] Stable | [ ] Declining | PRICE | | AGE | One-Unit | 85 % |
| Built-Up | [X] Over 75% | [ ] 25-75% | [ ] Under 25% | Demand/Supply | [ ] Shortage | [X] In Balance | [ ] Over Supply | $ (000) | | (yrs) | 2-4 Unit | 00 % |
| Growth | [ ] Rapid | [X] Stable | [ ] Slow | Marketing Time | [ ] Under 3 mths | [X] 3-6 mths | [ ] Over 6 mths | 2,000 | Low | NEW | Multi-Family | 00 % |
| | | | | | | | | 5,000 | High | 50 | Commercial | 00 % |
| | | | | | | | | 3,000 | Pred. | 20 | Other | 15 % |

Neighborhood Boundaries THE SUBJECT NEIGHBORHOOD IS MALIBU, POINT DUME AND FOOTHILLS OF MALIBU NORTH AND SOUTH OF PACIFIC COAST HIGHWAY.

Neighborhood Description MIXED RESIDENTIAL UTILITY WITH CUSTOM AND ESTATE PROPERTIES INTERSPERSED AMONG THE FOOTHILLS OF MALIBU AND POINT DUNES; LOCAL SERVICES, SCHOOLS AND RECREATION ARE EASILY ACCESSIBLE TO THE RESIDENTS OF THIS MARKET. THE TREND IS TO CONTINUED FAVORABLE MARKET APPEAL, MALIBU IMMEDIATE AND GENERAL AREAS.

Market Conditions (including support for the above conclusions) MARKETING TIME IS ESTIMATED AT 90 TO 180 DAYS; MINIMUM CONCESSIONS TO BUYERS IN THIS MARKET. THE RANGE OF VALUE ABOVE DOES NOT INCLUDE OCEAN/BEACHFRONT PROPERTIES OR ESTATES IN THE FOOTHILLS AND CANYONS OF MALIBU. THE ECONOMIC BASE REFLECTS GROWTH WITH STABILITY

**SITE**

Dimensions PLAT MAP ATTACHED Area 46,592 SQ.FT. Shape IRREGULAR View GOOD/OCEAN
Specific Zoning Classification R-1 Zoning Description RESIDENTIAL
Zoning Compliance [X] Legal [ ] Legal Nonconforming (Grandfathered Use) [ ] No Zoning [ ] Illegal (describe) N/A
Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? [X] Yes [ ] No If No, describe N/A

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements—Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | [X] | | Water | [X] | | Street ASPHALT | [X] | |
| Gas | [X] | | Sanitary Sewer | [X] | | Alley | | |

FEMA Special Flood Hazard Area [ ] Yes [X] No FEMA Flood Zone C FEMA Map # 060745/0768 C FEMA Map Date 11/15/85
Are the utilities and/or off-site improvements typical for the market area? [X] Yes [ ] No If No, describe. N/A
Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? [ ] Yes [X] No If Yes, describe.
NONE NOTED; VIEWS TOWARDS OCEAN AND MOUNTAINS FROM 2ND AND 3 LEVELS OF THE SUBJECT DWELLING.

**IMPROVEMENTS**

| General Description | Foundation | Exterior Description materials/condition | Interior materials/condition |
|---|---|---|---|
| Units [X] One [ ] One with Accessory Unit | [X] Concrete Slab [X] Crawl Space | Foundation Walls CONCRETE/AVG. | Floors WOOD/CRPT/GOOD |
| # of Stories 1+ | [ ] Full Basement [ ] Partial Basement | Exterior Walls STUCCO/GOOD | Walls DRYWALL/GOOD |
| Type [X] Det. [ ] Att. [ ] S-Det./End Unit | Basement Area NONE sq. ft. | Roof Surface BUILT-UP/GOOD | Trim/Finish WOOD/GOOD |
| [X] Existing [ ] Proposed [ ] Under Const. | Basement Finish N/A % | Gutters & Downspouts METAL/GOOD | Bath Floor TILE/GOOD |
| Design (Style) AVERAGE | [ ] Outside Entry/Exit [ ] Sump Pump | Window Type SLIDERS/GOOD | Bath Wainscot TILE/GOOD |
| Year Built 1960/66/95/REM. | Evidence of [ ] Infestation | Storm Sash/Insulated INSULATED/GOOD | Car Storage [ ] None |
| Effective Age (Yrs) 20 | [ ] Dampness [ ] Settlement | Screens SCREENS/GOOD | [X] Driveway # of Cars 4 |
| Attic [ ] None | Heating [X] FWA [ ] HWBB [ ] Radiant | Amenities [ ] Woodstove(s) # | Driveway Surface CONCRETE |
| [ ] Drop Stair [ ] Stairs | [ ] Other Fuel GAS | [X] Fireplace(s) # 1 [X] Fence REAR | [X] Garage # of Cars 2 |
| [ ] Floor [X] Scuttle | Cooling [ ] Central Air Conditioning | [X] Patio/Deck [X] Porch ENTRY | [ ] Carport # of Cars |
| [ ] Finished [ ] Heated | [ ] Individual [ ] Other | [ ] Pool [ ] Other | [X] Att. [ ] Det. [ ] Built-in |

Appliances [ ] Refrigerator [X] Range/Oven [X] Dishwasher [X] Disposal [ ] Microwave [ ] Washer/Dryer [X] Other (describe) FAN/HOOD
Finished area **above** grade contains: 9 Rooms 5 Bedrooms 4.00 Bath(s) 4,093 Square Feet of Gross Living Area Above Grade
Additional features (special energy efficient items, etc.) STANDARD FEATURES IN CONSTRUCTION; OPEN WITH GOOD TRAFFIC FLOW, PRIVACY AND ROOM SEPARATION

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.). NO REQUIREMENTS; THE CONDITION OF THE SUBJECT PROPERTY IS GOOD TO EXCELLENT, BEAM CEILINGS (PHOTOS). ADDITIONS AND REMODELING 1995 TO DATE.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? [ ] Yes [X] No If Yes, describe
NONE NOTED

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? [X] Yes [ ] No If No, describe N/A

JOHN WILSON & ASSOCIATES

File No. R080146
Case No.

# Uniform Residential Appraisal Report

There are 9 comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 3,250,000 to $ 4,919,000

There are 7 comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 3,195,000 to $ 4,579,000

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 28880 SELFRIDGE DRIVE MALIBU, CA 90265 | 6537 SEA STAR DRIVE MALIBU | | 30532 MORNING VIEW DRIVE MALIBU | | 7050 DUME DRIVE MALIBU | |
| Proximity to Subject | | 2 MILES | | 1.6 MILES | | .5 MILE | |
| Sale Price | $ | | $ 3,825,000 | | $ 4,900,000 | | $ 4,700,000 |
| Sale Price/Gross Liv. Area | $ 0.00 sq. ft. | $ 775.81 sq. ft. | | $ 1,054.67 sq. ft. | | $ 1,571.38 sq. ft. | |
| Data Source(s) | | DOC #2284672 | | DOC #96602 | | DOC # | |
| Verification Source(s) | | MLS/NDC DATA | | MLS/NDC DATA | | MLS/NDC DATA | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sale or Financing | | FINANCING | | FINANCING | | FINANCING | |
| Concessions | | CTNL TERMS | | CTNL TERMS | | CTNL TERMS | |
| Date of Sale/Time | | 10/03/07 | | 01/17/08 | | 10/10/07 | |
| Location | GOOD | GOOD | | GOOD | | GOOD/EXCL. | |
| Leasehold/Fee Simple | FEE SIMPLE | FEE SIMPLE | | FEE SIMPLE | | FEE SIMPLE | |
| Site | 46,592 SQ.FT. | 82,734 SQ.FT. | -100,000 | 40,010 SQ.FT. | | 49,229 SQ.FT. | |
| View | GOOD/OCEAN | EXCL./OCEAN | -100,000 | EXCL./OCEAN | -100,000 | EXCL./OCEAN | -100,000 |
| Design (Style) | AVERAGE | AVG./GOOD | -35,000 | AVG./GOOD | -35,000 | AVG./GOOD | -35,000 |
| Quality of Construction | GOOD | GOOD | | GOOD | | GOOD | |
| Actual Age | 48/REM./ADD'N | 13 | -35,000 | 2 | -50,000 | 37/REM. | |
| Condition | GOOD | GOOD | | GOOD | | GOOD | |
| Above Grade Room Count (Total / Bdrms / Baths) | 9 / 5 / 4.00 | 9 / 4 / 3.00 | | 9 / 5 / 5.50 | | 9 / 4 / 3.00 | |
| Gross Living Area | 4,093 sq. ft. | 4,924 sq. ft. | -62,300 | 4,646 sq. ft. | -41,500 | 2,991 sq. ft. | +82,600 |
| Basement & Finished Rooms Below Grade | NONE N/A | NONE N/A | | NONE N/A | | NONE N/A | |
| Functional Utility | GOOD | GOOD | | GOOD | | GOOD | |
| Heating/Cooling | FWA | SIMILAR | | SIMILAR | | SIMILAR | |
| Energy Efficient Items | STANDARD | STANDARD | | STANDARD | | STANDARD | |
| Garage/Carport | GARAGE | GARAGE | | GARAGE | | GARAGE | |
| Porch/Patio/Deck | PATIO, DECK | SIMILAR | | SIMILAR | | SIMILAR | |
| FIREPLACES | FIREPLACE | FIREPLACE | | FIREPLACE | | FIREPLACE | |
| POOL/SPA | NONE | NONE | | NONE | | NONE | |
| LANDSCAPING | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Net Adjustment (Total) | | [ ] + [X] - | $ -332,300 | [ ] + [X] - | $ -226,500 | [ ] + [X] - | $ -52,400 |
| Adjusted Sale Price of Comparables | | Net Adj: -9% Gross Adj: 9% | $ 3,492,700 | Net Adj: -5% Gross Adj: 5% | $ 4,673,500 | Net Adj: -1% Gross Adj: 5% | $ 4,647,600 |

[X] did [ ] did not research the sale or transfer history of the subject property and comparable sales. If not, explain N/A

My research [ ] did [X] did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data source(s) MLS/NDC DATA

My research [ ] did [X] did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data source(s) MLS/NDC DATA

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE # 1 | COMPARABLE SALE # 2 | COMPARABLE SALE # 3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | NONE | NONE | NONE | NONE |
| Price of Prior Sale/Transfer | N/A | N/A | N/A | N/A |
| Data Source(s) | MLS/NDC DATA | MLS/NDC DATA | MLS/NDC DATA | MLS/NDC DATA |
| Effective Date of Data Source(s) | 03/31/08 | 03/31/08 | 03/31/08 | 03/31/08 |

Analysis of prior sale or transfer history of the subject property and comparable sales THE SUBJECT HAS NOT BEEN LISTED FOR SALE, PAST 12 MONTHS; NO PRIOR SALES OF THE SUBJECT, PAST 36 MONTHS. NO PRIOR SALES OF THE COMPARABLE SALES, PAST 12 MONTHS.

Summary of Sales Comparison Approach THE ADJUSTMENT FOR LIVABLE AREA IS $75.00 PER SQ.FT; SALES WERE SELECTED FROM THE COMPETING, SUBJECT MARKET AREAS. ADDITIONAL COMMENTS ON PAGE 3 OF THIS REPORT. COMPARABLE 3, MOST SIMILAR TO THE SUBJECT IS SUPERIOR IN VIEW, SIMILAR IN SITE AREA, AGE AND UTILITY. COMPARABLE 1 IS SUPERIOR IN VIEW AND LIVABLE AREA, NEWER IN AGE AND CONDITION TO THE SUBJECT. COMPARABLE 2, A NEWER DWELLING, SUPERIOR IN LIVABLE AREA AND CONDITION; MINIMUM SALES ON POINT DUME THIS REPORT DATE THAT ARE SIMILAR TO THE SUBJECT WITH RESPECT TO LOCATION AND SITE. THE ESTIMATED VALUE BY THE SALES COMPARISON APPROACH IS $3,750,000 THIS REPORT DATE.

Indicated Value by Sales Comparison Approach $ 3,750,000

**Indicated Value by: Sales Comparison Approach $** 3,750,000 **Cost Approach (if developed) $** 3,466,752 **Income Approach (if developed) $** N/A

THE INCOME APPROACH IS NOT APPLICABLE THIS PROPERTY TYPE. THE COST APPROACH IS SUPPORTED BY CONSTRUCTION AND SALES ACTIVITY; THE SALES COMPARISON APPROACH IS THE MOST APPLICABLE OF THE THREE APPROACHES TO VALUE. THE ESTIMATED MARKET VALUE FOR THE SUBJECT PROPERTY, THIS REPORT DATE IS $3,750,000.

This appraisal is made [X] "as is," [ ] subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, [ ] subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or [ ] subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair: NO REQUIREMENTS

**Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $** 3,750,000 **, as of** 03/31/08 **, which is the date of inspection and the effective date of this appraisal.**

JOHN WILSON & ASSOCIATES

File No. R080146
Case No.

# Uniform Residential Appraisal Report

## ADDITIONAL COMMENTS

THE INTENDED USER OF THIS APPRAISAL REPORT IS THE LENDER/CLIENT. THE INTENDED USE IS TO EVALUATE THE PROPERTY THAT IS THE SUBJECT OF THIS APPRAISAL FOR A MORTGAGE FINANCE TRANSACTION, SUBJECT TO THE STATED SCOPE OF THE WORK, PURPOSE OF THE APPRAISAL, REPORTING REQUIREMENTS OF THIS APPRAISAL REPORT FOR, AND DEFINITION OF THE MARKET VALUE. NO ADDITIONAL INTENDED USERS ARE IDENTIFIED BY THE APPRAISER.

NO TOXIC SUBSTANCES OR HAZARDOUS WASTES NOTED ON SITE OR IN THE SUBJECT NEIGHBORHOOD.

THIS APPRAISAL REPORT CONTAINS ELECTRONIC IMAGES AND ELECTRONIC SIGNATURES.

FANNIE MAE GUIDELINES INDICATE THAT THE PHOTOGRAPHS MUST BE CLEAR AND DESCRIPTIVE IN EITHER BLACK AND WHITE OR COLOR. THE PHOTOGRAPHS MUST BE ORIGINALS THAT ARE PRODUCED EITHER BUY PHOTOGRAPHY OR ELECTRONIC IMAGING
(FANNIE MAE PROPERTY AND APPRAISAL ANALYSIS - APPRAISAL DOCUMENTATION AND CERTIFICATIONS SECTION 204).

BEACH ACCESS: $125 ANNUALLY; #2

SUBJECT AND COMPARABLE 3 ARE SITUATED ON POINT DUME; SUPERIOR TO TYPICAL DWELLINGS IN FOOTHILLS OF MALIBU; COMPARABLE 3 IS MOST SIMILAR TO THE SUBJECT IN LOCATION, SITE AREA, CONDITION OF IMPROVEMENTS, SUPERIOR IN VIEW TO THE SUBJECT.

SALE AT 5845 BONSALL DRIVE WAS NOT INCLUDED, SIMILAR TO COMPARABLE 1 WITH VALUE IN THE SITE (65,380 SQ.FT.), SOLD 10/11/07 FOR $2,300,000 DOC #2323628, DWELLING WITH 1,619 SQ.FT., 6/1/3 ROOM COUNT. ADDITIONALLY, SALE AT 30324 MORNING VIEW DRIVE SOLD 01/09/08 FOR $2,450,000 DOC #47239, A BOARD-UP/FIXER, SALE FOR SITE OF 113,256 SQ.FT. LAND AREA WITH 6/3/2 ROOM COUNT.

## COST APPROACH

**COST APPROACH TO VALUE (not required by Fannie Mae.)**

Provide adequate information for the lender/client to replicate your cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value) MINIMUM LOT SALES IN THE IMMEDIATE SUBJECT MARKET THAT ARE REPRESENTATIVE OF THE SUBJECT; LAND VALUE WAS ESTIMATED BY EXTRACTION.

| | |
|---|---|
| ESTIMATED [ ] REPRODUCTION OR [X] REPLACEMENT COST NEW | OPINION OF SITE VALUE =$ 2,500,000 |
| Source of cost data MARSHALL & SWIFT COST DATA | Dwelling 4,093 Sq. Ft. @ $ 225.00 =$ 920,925 |
| Quality rating from cost service Effective date of cost data 03/31/08 | Sq. Ft. @ $ =$ |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | PATIOS, DECK, ENTRY, FENCE, OFFICE 85,000 |
| THE RATIO OF LAND VALUE TO IMPROVEMENTS IS TYPICAL OF | Garage/Carport 380 Sq. Ft. @ $ 28.00 =$ 10,640 |
| THIS MARKET. THE FACTORS FOR "REPLACEMENT COSTS NEW" | Total Estimate of Cost-new =$ 1,016,565 |
| OBTAINED FROM "MARSHALL & SWIFT RESIDENTIAL HANDBOOK" | Less Physical 12 / Functional / External |
| AND "BUILDING COSTS.NET." | Depreciation 125,313 / 0 / 0 =$ ( 125,313 ) |
| | Depreciated Cost of Improvements =$ 891,252 |
| | "As-is" Value of Site Improvements =$ 75,500 |
| Estimated Remaining Economic Life (HUD and VA only) Years | Indicated Value By Cost Approach =$ 3,466,752 |

## INCOME

**INCOME APPROACH TO VALUE (not required by Fannie Mae.)**

Estimated Monthly Market Rent $ X Gross Multiplier =$ Indicated Value by Income Approach

Summary of Income Approach (including support for market rent and GRM)

## PUD INFORMATION

**PROJECT INFORMATION FOR PUDs (if applicable)**

Is the developer/builder in control of the Homeowner's Association (HOA)? [ ] Yes [ ] No Unit type(s) [ ] Detached [ ] Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal Name of Project

Total number of phases Total number of units Total number of units sold

Total number of units rented Total number of units for sale Data source(s)

Was the project created by the conversion of existing building(s) into a PUD? [ ] Yes [ ] No If Yes, date of conversion.

Does the project contain any multi-dwelling units? [ ] Yes [ ] No Data source.

Are the units, common elements, and recreation facilities complete? [ ] Yes [ ] No If No, describe the status of completion.

Are the common elements leased to or by the Homeowner's Association? [ ] Yes [ ] No If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

Jan 25 10 03:32p Pamela Ridley 85-499-6707 p.15

SALES - PAST 12 MONTHS, COMPETING NEIGHBORHOOD File No. R080146
CASE NO.

Borrower RIDLEY
Property Address 28860 SELFRIDGE DRIVE
City MALIBU County LOS ANGELES State CA Zip Code 90265
Lender/Client MALIBU MORTGAGE Address 4222 LOST SPRINGS DRIVE, AGOURA HILLS, CA 91301

1
Miles: 0.18
Owner: DEVINE BRENDA — APN: 4468-020-01?
Site: 6725 PORTSHEAD RD MALIBU, CA 90265-4261 — House Style: UNKNOWN
Mail: PO BOX 9378 MALIBU, CA 90264 — Acreage: 0.87
Sale Price: $3,250,000 — Transferred: 08/22/2007
Use Code: SFR — No. of Units: 1
Bedroom: 4 Bathroom: 5.00 Year: 2003 Sqft: 3,672 $/Sqft: $885.08 — Lot Size: 37,832
Thomas Guide: 667-E2 — Document: 00000196498

2
Miles: 0.19
Owner: 6622 PORTSHEAD ROAD HOUSE — APN: 4466-018-00?
Site: 6622 PORTSHEAD RD MALIBU, CA 90265-4260 — House Style: UNKNOWN
Mail: 2850 OCEAN PARK BLVD 300 SANTA MONICA, CA 90405-6216 — Acreage: 1.08
Sale Price: $4,910,000 — Transferred: 09/27/2007
Use Code: SFR — No. of Units: 1
Bedroom: 4 Bathroom: 4.00 Year: 1977 Sqft: 3,696 $/Sqft: $1,330.90 — Lot Size: 47,044
Thomas Guide: 667-E2 — Document: 00000222951

3
Miles: 0.34
Owner: BIELER TRUST — APN: 4466-008-024
Site: 6703 DUNE DR MALIBU, CA 90265-4222 — House Style: CONVENTIONA
Mail: 6703 DUNE DR MALIBU, CA 90265-4222 — Acreage: 0.61
Sale Price: $3,450,000 — Transferred: 08/28/2007
Use Code: SFR — No. of Units: 1
Bedroom: 4 Bathroom: 4.00 Year: 1956 Sqft: 2,873 $/Sqft: $1,200.84 — Lot Size: 26,572
Thomas Guide: 667-E2 — Document: 00000159436?

4
Miles: 0.63
Owner: KRAMER CALEB — APN: 4466-014-00?
Site: 7050 DUME DR MALIBU, CA 90265-4229 — House Style: SPANISH
Mail: 333 S GRAND AVE 28TH LOS ANGELES, CA 90071-1504 — Acreage: 1.13
Sale Price: $4,700,000 — Transferred: 10/10/2007
Use Code: SFR — No. of Units: 1
Bedroom: 4 Bathroom: 3.00 Year: 1971 Sqft: 2,991 $/Sqft: $1,571.38 — Lot Size: 49,223
Thomas Guide: 667-E4 — Document: 00000232196

5
Miles: 0.83
Owner: COHEN ROBERT & ELIZABETH — APN: 4467-018-03?
Site: 28854 VIA VENEZIA MALIBU, CA 90265-4061 — House Style: UNKNOWN
Mail: 28854 VIA VENEZIA MALIBU, CA 90265-4061 — Acreage: 0.74
Sale Price: $3,300,000 — Transferred: 06/28/2007
Use Code: SFR — No. of Units: 1
Bedroom: 5 Bathroom: 5.00 Year: 1997 Sqft: 5,607 $/Sqft: $588.55 — Lot Size: 32,430
Thomas Guide: 667-F1 — Document: 00000155297

6
Miles: 1.29
Owner: HALL RAYMOND F & TENNANT-HALL ANDREA — APN: 4467-027-00?
Site: 5770 BUSCH DR MALIBU, CA 90265-3806 — House Style: UNKNOWN
Mail: 5770 BUSCH DR MALIBU, CA 90265-3806 — Acreage: 1.14
Sale Price: $3,570,000 — Transferred: 07/17/2007
Use Code: SFR — No. of Units: 1
Bedroom: 4 Bathroom: 4.00 Year: 1963 Sqft: 3,379 $/Sqft: $1,056.53 — Lot Size: 49,658
Thomas Guide: 667-D1 — Document: 00000168267

7
Miles: 1.67
Owner: GREENSIDE MALIBU I LLC — APN: 4460-008-019
Site: 27532 PACIFIC COAST HWY MALIBU, CA 90265-4339 — House Style: CONVENTIONA
Mail: N/AVAIL , CA — Acreage: 5.60
Sale Price: $4,500,000 — Transferred: 06/19/2007
Use Code: SFR — No. of Units: 1
Bedroom: 3 Bathroom: 2.00 Year: 1958 Sqft: 1,730 $/Sqft: $2,601.16 — Lot Size: 243,936
Thomas Guide: 668-G6 — Document: 00000147293?

8
Miles: 2.17
Owner: ODEN MATTHEW & MELISSA — APN: 4469-029-001
Site: 30532 MORNING VIEW DR MALIBU, CA 90265 — House Style: UNKNOWN
Mail: 30181 PACIFIC COAST HWY MALIBU, CA 90265-3602 — Acreage: 0.92
Sale Price: $4,900,000 — Transferred: 01/17/2008
Use Code: SFR — No. of Units: 1
Bedroom: 5 Bathroom: 6.00 Year: 2006 Sqft: 4,646 $/Sqft: $1,054.67 — Lot Size: 40,010
Thomas Guide: 667-B1 — Document: 00000093680

9
Miles: 2.39
Owner: HAMMERSCHMITT L H & P FAM — APN: 4469-047-006
Site: 6357 SEA STAR DR MALIBU, CA 90265-3642 — House Style: UNKNOWN
Mail: 6357 SEA STAR DR MALIBU, CA 90265-3642 — Acreage: 1.90
Sale Price: $3,825,000 — Transferred: 10/03/2007
Use Code: SFR — No. of Units: 1
Bedroom: 4 Bathroom: 3.00 Year: 1995 Sqft: 4,924 $/Sqft: $776.81 — Lot Size: 82,733
Thomas Guide: 627-B7 — Document: 00000236467

ClickFORMS Appraisal Software 800-622-8727 Page 5 of 20

JOHN WILSON & ASSOCIATES

File No. R080146
CASE NO.

## Uniform Residential Appraisal Report

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

**INTENDED USE:** The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:** The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

Jan 25 10 03:33p Pamela Ridley 85-499-6707 p.17

JOHN WILSON & ASSOCIATES
Uniform Residential Appraisal Report
File No. R080146
CASE NO.

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

Freddie Mac Form 70 March 2005 Fannie Mae Form 1004 March 2005
ClickFORMS Appraisal Software 800-622-8727 Page 7 of 20

JOHN WILSON & ASSOCIATES

File No. R080146
CASE NO.

## Uniform Residential Appraisal Report

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION:** The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

APPRAISER

Signature [signature]
Name JOHN WILSON
Company Name JOHN WILSON & ASSOCIATES
Company Address 2899 AGOURA ROAD, #131
WESTLAKE VILLAGE, CA 91361
Telephone Number 805-432-6141
Email Address JWILSONAPPRAISAL@GMAIL.COM
Date of Signature and Report 04/01/08
Effective Date of Appraisal 03/31/08
State Certification # AR027441
or State License #
or Other (describe) State #
State CA
Expiration Date of Certification or License 02/28/10

ADDRESS OF PROPERTY APPRAISED
28860 SELFRIDGE DRIVE
MALIBU, CA 90265

APPRAISED VALUE OF SUBJECT PROPERTY $ 3,750,000

LENDER/CLIENT
Name
Company Name MALIBU MORTGAGE
Company Address 4222 LOST SPRINGS DRIVE
AGOURA HILLS, CA 91301
Email Address MALIBUMORTGAGE@YAHOO.COM

SUPERVISORY APPRAISER (ONLY IF REQUIRED)

Signature
Name
Company Name
Company Address
Telephone Number
Email Address
Date of Signature
State Certification #
or State License #
State
Expiration Date of Certification or License

SUBJECT PROPERTY

☐ Did not inspect subject property
☐ Did inspect exterior of subject property from street
Date of Inspection
☐ Did inspect interior and exterior of subject property
Date of Inspection

COMPARABLE SALES

☐ Did not inspect exterior of comparable sales from street
☐ Did inspect exterior of comparable sales from street
Date of Inspection



JOHN WILSON & ASSOCIATES
**SKETCH ADDENDUM**

File No. R080146
CASE NO.

Borrower RIDLEY
Property Address 28860 SELFRIDGE DRIVE
City MALIBU County LOS ANGELES State CA Zip Code 90265
Lender/Client MALIBU MORTGAGE Address 4222 LOST SPRINGS DRIVE, AGOURA HILLS, CA 91301



# Exhibit B

# APPRAISAL OF REAL PROPERTY

**LOCATED AT:**
28860 SELFRIDGE DR
F SURVEY AS PER BK 56 PG 29 TO 32 OF RECORD OF SURVEYS EX OI
MALIBU, CA 90265

**FOR:**
PRVT CLIENT

**AS OF:**
NOVEMBER 24, 2009

**BY:**
JOE ONSTEAD

Form GA3 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

# Exterior-Only Inspection Residential Appraisal Report

File # 111820-R

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

**SUBJECT**

Property Address 28860 SELFRIDGE DR | City MALIBU | State CA | Zip Code 90265
Borrower RIDLEY,PAMELA | Owner of Public Record RIDLEY,PAMELA | County LOS ANGELES
Legal Description RECORD OF SURVEY AS PER BK 56 PG 29 TO 32 OF RECORD OF SURVEYS EX OF ST LOT 75
Assessor's Parcel # 4466-018-006 | Tax Year 2008 | R.E. Taxes $ 8,600.49
Neighborhood Name NA | Map Reference 667/F2 | Census Tract 8004.03
Occupant ☒ Owner ☐ Tenant ☐ Vacant | Special Assessments $ 0.00 | ☐ PUD | HOA $ | ☐ per year ☐ per month
Property Rights Appraised ☒ Fee Simple ☐ Leasehold ☐ Other (describe)
Assignment Type ☐ Purchase Transaction ☐ Refinance Transaction ☒ Other (describe) LEGAL
Lender/Client PRVT CLIENT | Address
Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? ☐ Yes ☒ No
Report data source(s) used, offering price(s), and date(s). MLS

**CONTRACT**

I ☐ did ☒ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed. NA

Contract Price $ REFI | Date of Contract NA | Is the property seller the owner of public record? ☐ Yes ☐ No | Data Source(s) NA
Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? ☐ Yes ☐ No
If Yes, report the total dollar amount and describe the items to be paid. NA

**NEIGHBORHOOD**

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | One-Unit Housing Trends | One-Unit Housing | | | Present Land Use % | |
|---|---|---|---|---|---|---|
| | | PRICE | | AGE | | |
| Location ☐ Urban ☒ Suburban ☐ Rural | Property Values ☐ Increasing ☐ Stable ☒ Declining | $ (000) | | (yrs) | One-Unit | 95 % |
| Built-Up ☒ Over 75% ☐ 25-75% ☐ Under 25% | Demand/Supply ☐ Shortage ☒ In Balance ☐ Over Supply | 1.5ML | Low | 10 | 2-4 Unit | % |
| Growth ☐ Rapid ☒ Stable ☐ Slow | Marketing Time ☐ Under 3 mths ☐ 3-6 mths ☒ Over 6 mths | 16ML | High | 60 | Multi-Family | % |
| | | 3.5ML | Pred. | 45 | Commercial | 5 % |
| | | | | | Other | % |

Neighborhood Boundaries LOCATED SOUTH OF PACIFIC COAST HWY, EAST OF BIRDVIEW AVE, NORTH OF CLIFFSIDE DR, AND WEST OF ZUMIREZ DR.
Neighborhood Description SEE ADDENDUM:

Market Conditions (including support for the above conclusions) DEMAND FOR PROPERTIES SIMILAR TO THE SUBJECT APPEAR TO BE AVERAGE AT THIS TIME. TYPICAL FINANCING IN THIS AREA IS CONVENTIONAL WITH NO CONCESSIONS BEING OFFERED AT THIS TIME AND A MARKETING TIME OF THREE TO SIX MONTHS.

**SITE**

Dimensions 112 X 415.66 | Area 46,554 Sq.Ft. | Shape RECTANGULAR | View OCEAN VIEWS
Specific Zoning Classification LCRA1* | Zoning Description PERMITS SFRS.
Zoning Compliance ☒ Legal ☐ Legal Nonconforming (Grandfathered Use) ☐ No Zoning ☐ Illegal (describe)
Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? ☒ Yes ☐ No If No, describe

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements - Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | ☐ | Water | ☒ | ☐ | Street PAVED | ☒ | ☒ |
| Gas | ☒ | ☐ | Sanitary Sewer | ☐ | ☒ SCEPTIC | Alley NONE | ☐ | ☐ |

FEMA Special Flood Hazard Area ☐ Yes ☒ No | FEMA Flood Zone X | FEMA Map # 060745 / 1518 F | FEMA Map Date 09/26/2008
Are the utilities and off-site improvements typical for the market area? ☒ Yes ☐ No If No, describe
Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? ☐ Yes ☒ No If Yes, describe

**IMPROVEMENTS**

Source(s) Used for Physical Characteristics of Property ☐ Appraisal Files ☒ MLS ☒ Assessment and Tax Records ☐ Prior Inspection ☒ Property Owner
☒ Other (describe) DRIVE BY INSPECTION | Data Source for Gross Living Area COUNTY ASSESSOR

| General Description | General Description | Heating/Cooling | Amenities | Car Storage |
|---|---|---|---|---|
| Units ☒ One ☐ One with Accessory Unit | ☐ Concrete Slab ☒ Crawl Space | ☒ FWA ☐ HWBB | ☒ Fireplace(s) # -FP | ☐ None |
| # of Stories 1 | ☐ Full Basement ☐ Finished | ☐ Radiant | ☐ Woodstove(s) # | ☐ Driveway # of Cars 2 |
| Type ☒ Det. ☐ Att. ☐ S-Det./End Unit | ☐ Partial Basement ☐ Finished | ☐ Other | ☐ Patio/Deck | Driveway Surface CONCRETE |
| ☒ Existing ☐ Proposed ☐ Under Const. | Exterior Walls WD/STUCCO | Fuel GAS | ☒ Porch | ☒ Garage # of Cars 2-GA |
| Design (Style) CONV. | Roof Surface GRAVEL/AVG | ☒ Central Air Conditioning | ☐ Pool | ☐ Carport # of Cars |
| Year Built 1960 | Gutters & Downspouts GALVANIZED/ | ☐ Individual | ☒ Fence | ☒ Attached ☐ Detached |
| Effective Age (Yrs) 10 | Window Type MTL SLIDER/G | ☐ Other | ☒ Other BALCONY | ☐ Built-in |

Appliances ☐ Refrigerator ☐ Range/Oven ☐ Dishwasher ☐ Disposal ☐ Microwave ☐ Washer/Dryer ☐ Other (describe)
Finished area above grade contains: 9 Rooms 5 Bedrooms 3 Bath(s) 3,117 Square Feet of Gross Living Area Above Grade
Additional features (special energy efficient items, etc.) STANDARD

Describe the condition of the property and data source(s) (including apparent needed repairs, deterioration, renovations, remodeling, etc.). SEE ADDENDUM:

Are there any apparent physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? ☐ Yes ☒ No
If Yes, describe.

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? ☒ Yes ☐ No If No, describe.

Page 88

# Exterior-Only Inspection Residential Appraisal Report File # 111820-R

There are comparable properties currently offered for sale in the subject neighborhood ranging in price from $ to $

There are 7 comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 1.6ML to $ 16ML

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 28860 SELFRIDGE DR MALIBU, CA 90265 | 6745 PORTSHEAD RD 4466-020-008 | | 28965 GRAYFOX ST 4466-007-012 | | 7022 GRASSWOOD AVE 4466-012-001 | |
| Proximity to Subject | | 0.18 miles | | 0.40 miles | | 0.59 miles | |
| Sale Price | $ REFI | | $ 2,025,000 | | $ 3,800,000 | | $ 3,550,000 |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 779.15 sq.ft. | | $ 1180.12 sq.ft. | | $ 1015.45 sq.ft. | |
| Data Source(s) | | NDCDATA/MLS/DRV BY | | NDCDATA/MLS/DRV BY | | NDCDATA/MLS/DRIVE-BY | |
| Verification Source(s) | | DOC # 0000850647 | | DOC # 0001321290 | | DOC# 0001456233 | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing Concessions | | NA. CONV. NA | | NA CONV. NA | | 62% CONV. NA | |
| Date of Sale/Time | | 06/08/2009 | | 08/27/2009 | | 09/24/2009 | |
| Location | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Leasehold/Fee Simple | FEE SIMPLE | FEE SIMPLE | | FEE SIMPLE | | FEE SIMPLE | |
| Site | 46,554 Sq.Ft. | 70,132 | -235,500 | 61,855 | -155,000 | 43,560 | |
| View | OCEAN VIEWS | NONE | +200,000 | SIMILAR | | SIMILAR | |
| Design (Style) | CONV. | CONV. | | MEDITER | -50,000 | COLONIAL | -50,000 |
| Quality of Construction | AVERAGE | AVERAGE | | GOOD | -200,000 | GOOD | -200,000 |
| Actual Age | 1960 | 1973 | | 1960 | | 1992 | |
| Condition | AVERAGE | SIMILAR | | SUPERIOR | -200,000 | SUPERIOR | -200,000 |
| Above Grade Room Count (Total / Bdrms. / Baths) | 9 / 5 / 3 | 7 / 4 / 3.5 | -10,000 | 7 / 3 / 3 | | 10 / 5 / 5.5 | -30,000 |
| Gross Living Area | 3,117 sq.ft. | 2,599 sq.ft. | +52,000 | 3,220 sq.ft. | -10,500 | 3,496 sq.ft. | -38,000 |
| Basement & Finished Rooms Below Grade | NONE NA | NONE NA | | NONE NA | | NONE NA | |
| Functional Utility | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Heating/Cooling | FAU/CAC | FAU/CAC | | FAU/CAC | | FAU/CAC | |
| Energy Efficient Items | STANDARD | STANDARD | | STANDARD | | STANDARD | |
| Garage/Carport | 2-GAR | 2-GARAGE | | 2-GARAGE | | 2-GARAGE | |
| Porch/Patio/Deck | DECK/BALCON | DECK/PATIO | | DECK/PATIO | | DECK.PATIO | |
| | | | | POOL | -45,000 | | |
| | | | | | | | |
| Net Adjustment (Total) | | ☒ + ☐ - | $ 6,500 | ☐ + ☒ - | $ -660,500 | ☐ + ☒ - | $ -518,000 |
| Adjusted Sale Price of Comparables | | Net Adj. 0.3 % Gross Adj. 24.6 % | $ 2,031,500 | Net Adj. 17.4 % Gross Adj. 17.4 % | $ 3,139,500 | Net Adj. 14.6 % Gross Adj. 14.6 % | $ 3,032,000 |

I ☒ did ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research ☐ did ☒ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.

Data Source(s) NDCDATA/MLS

My research ☐ did ☒ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.

Data Source(s) MLS/NDCDATA

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 07/14/1995 | 02/13/2002 | 06/05/1997 | 10/12/2005 |
| Price of Prior Sale/Transfer | 575,000 | 12,000 | 1,300,000 | 2,500,000 |
| Data Source(s) | NCDATA | NDCDATA | NDCDATA | NDCDATA |
| Effective Date of Data Source(s) | 11/2009 | 11/2009 | 11/2009 | 11/2009 |

Analysis of prior sale or transfer history of the subject property and comparable sales NONE. PER DATAQUICK/LA TIMES ZIP CODE CHARTS, THE SUBJECT ZIP CODE HAS SEEN AN 39.9% DECREASE IN VALUE FROM THE SAME MONTH ONE YEAR AGO.

Summary of Sales Comparison Approach SEE ADDENDUM:

Indicated Value by Sales Comparison Approach $ 2,500,000

Indicated Value by: Sales Comparison Approach $ 2,500,000 Cost Approach (if developed) $ 2,300,677 Income Approach (if developed) $ NA

WHILE THE COST APPROACH SUPPORTS THE FINAL VALUE, THE MARKET APPROACH IS BEST INDICATOR OF VALUE AS IT BEST REFLECTS ACTIONS OF BUYERS AND SELLERS IN THE MARKETPLACE. THE INCOME APPROACH IS NOT APPLICABLE AS SUBJECTS NEIGHBORHOOD IS OWNER OCCUPIED.

This appraisal is made ☒ "as is", ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☐ subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:

**Based on a visual inspection of the exterior areas of the subject property from at least the street, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $ 2,500,000 , as of NOVEMBER 24, 2009 , which is the date of inspection and the effective date of this appraisal.**

Page 81

## Exterior-Only Inspection Residential Appraisal Report

File # 111820-R

ADDITIONAL COMMENTS

COST APPROACH

**COST APPROACH TO VALUE (not required by Fannie Mae)**

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value) SEE BELOW

| | |
|---|---|
| ESTIMATED ☐ REPRODUCTION OR ☒ REPLACEMENT COST NEW | OPINION OF SITE VALUE =$ 1,500,000 |
| Source of cost data MARSHALL AND SWIFT | DWELLING 3,117 Sq.Ft. @ $ 250.00 =$ 779,250 |
| Quality rating from cost service AVG Effective date of cost data 2008 | NONE Sq.Ft. @ $ =$ |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | F/P BLTINS/FENCE/PATIO/BALCONY =$ 75,000 |
| THE SOURCE OF COST ESTIMATE IS MARSHALL AND SWIFT. LAND | Garage/Carport 450 Sq.Ft. @ $ 35.00 =$ 15,750 |
| VALUE BY ABSTRACTION. LAND TO VALUE RATIO IS TYPICAL FOR | Total Estimate of Cost-New =$ 870,000 |
| THE AREA. REMAINING ECONOMIC LIFE IS 60 YRS. | Less Physical / Functional / External |
| | Depreciation 124,323 =$( 124,323) |
| | Depreciated Cost of Improvements =$ 745,677 |
| | "As-is" Value of Site Improvements =$ 55,000 |
| Estimated Remaining Economic Life (HUD and VA only) 60 Years | INDICATED VALUE BY COST APPROACH =$ 2,300,677 |

INCOME

**INCOME APPROACH TO VALUE (not required by Fannie Mae)**

Estimated Monthly Market Rent $ 0 X Gross Rent Multiplier 0 = $ Indicated Value by Income Approach

Summary of Income Approach (including support for market rent and GRM) NA

PUD INFORMATION

**PROJECT INFORMATION FOR PUDs (if applicable)**

Is the developer/builder in control of the Homeowners' Association (HOA)? ☐ Yes ☐ No Unit type(s) ☐ Detached ☐ Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal Name of Project

Total number of phases | Total number of units | Total number of units sold

Total number of units rented | Total number of units for sale | Data source(s)

Was the project created by the conversion of existing building(s) into a PUD? ☐ Yes ☐ No If Yes, date of conversion

Does the project contain any multi-dwelling units? ☐ Yes ☐ No Data Source(s)

Are the units, common elements, and recreation facilities complete? ☐ Yes ☐ No If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association? ☐ Yes ☐ No If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

Form 2055 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

Page 82

## Exterior-Only Inspection Residential Appraisal Report File # 111820-R

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

SCOPE OF WORK: The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a visual inspection of the exterior areas of the subject property from at least the street, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

The appraiser must be able to obtain adequate information about the physical characteristics (including, but not limited to, condition, room count, gross living area, etc.) of the subject property from the exterior-only inspection and reliable public and/or private sources to perform this appraisal. The appraiser should use the same type of data sources that he or she uses for comparable sales such as, but not limited to, multiple listing services, tax and assessment records, prior inspections, appraisal files, information provided by the property owner, etc.

INTENDED USE: The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

INTENDED USER: The intended user of this appraisal report is the lender/client.

DEFINITION OF MARKET VALUE: The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS: The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

3. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

4. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

5. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

Page 83

# Exterior-Only Inspection Residential Appraisal Report File # 111820-R

APPRAISER'S CERTIFICATION: The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a visual inspection of the exterior areas of the subject property from at least the street. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

## Exterior-Only Inspection Residential Appraisal Report File # 111820-R

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

SUPERVISORY APPRAISER'S CERTIFICATION: The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

**APPRAISER**

Signature ____________
Name JOE ONSTEAD
Company Name Tanner & Associates
Company Address 10660 TURNBOW DR., SUNLAND, CA., 91040
Telephone Number 818-353-3517
Email Address jonstead@ca.rr.com
Date of Signature and Report December 03, 2009
Effective Date of Appraisal NOVEMBER 24, 2009
State Certification # AG008645
or State License # ____________
or Other (describe) ____________ State # ____________
State CALIF.
Expiration Date of Certification or License 09/29/2010

ADDRESS OF PROPERTY APPRAISED
28860 SELFRIDGE DR
MALIBU, CA 90265

APPRAISED VALUE OF SUBJECT PROPERTY $ 2,500,000

LENDER/CLIENT
Name ____________
Company Name PRVT CLIENT
Company Address ____________
Email Address ____________

**SUPERVISORY APPRAISER (ONLY IF REQUIRED)**

Signature ____________
Name ____________
Company Name Tanner & Associates
Company Address 9720 Washburn Avenue Downey, CA 90241
Telephone Number (562) 803-8888
Email Address Tannerjw@aol.com
Date of Signature December 03, 2009
State Certification # AG013813
or State License # ____________
State CA
Expiration Date of Certification or License 06/17/2011

SUBJECT PROPERTY

☒ Did not inspect subject property
☐ Did inspect exterior of subject property from street
Date of Inspection ____________

COMPARABLE SALES

☒ Did not inspect exterior of comparable sales from street
☐ Did inspect exterior of comparable sales from street
Date of Inspection ____________

Form 2055 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

File No. 111820-R

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Borrower/Client | RIDLEY,PAMELA | | | | | | |
| Property Address | 28860 SELFRIDGE DR | | | | | | |
| City | MALIBU | County | LOS ANGELES | State | CA | Zip Code | 90265 |
| Lender | PRVT CLIENT | | | | | | |

**NEIGHBORHOOD COMMENTS:**

THE SUBJECT IS LOCATED IN THE CITY OF MALIBU. MORE SPECIFICALLY, SOUTH OF PACIFIC COAST HWY, TWO BLOCKS EAST OF DUME DR, THREE BLOCKS NORTH OF GRAYFOX ST, AND TWO BLOCKS WEST OF ZUMIREZ DR. THE NEIGHBORHOOD IS LOCATED ON A PENINSULA WITH OCEAN VIEWS ON ALL THREE SIDES. THE NEIGHBORHOOD IS KNOWN AS POINT DUME. POINT DUME STATE BEACH FORMS THE FINGER OF THE PENINSULA WHILE ZUMA BEACH PARK IS LOCATED ALONG THE WESTERLY OCEAN'S EDGE. THE EASTERLY SHORE OVERLOOKS THE COAST WHICH, WHEN LIT AT NIGHT, FORMS THE SHAPE OF A NECKLACE KNOWN AS THE "QUEENS NECKLACE", A HIGHLY COVETED VIEW. THE NEIGHBORHOOD IS COMPOSED AVERAGE TO GOOD QUALITY SINGLE FAMILY HOMES, OF VARIOUS SIZES AND AGES. THE SUBJECT IS PROXIMATE TO SCHOOLS, PARKS, PUBLIC TRANSPORTATION, LOCAL EMPLOYMENT CENTERS, RECREATIONAL FACILITIES, SHOPPING CENTERS, AND ALL OTHER CONSUMER AND CIVIC SERVICES AND NEEDS, MARKETABILITY OF THE AREA IS GOOD.

**SITE COMMENTS:**

THE SUBJECT SITE IS A TYPICAL SIZED, INTERIOR LOT THAT SLOPES DOWNWARD FROM THE STREET OPENING UP TO DISTANT VIEWS OF THE OCEAN. ACCESS TO THE SITE IS GUARDED WITH AN ELECTRONICALLY ACTIVATED GATE AND SECURITY SYSTEM. TYPICAL UTILITY EASEMENTS ARE PRESENT WITH NO ADVERSE EASEMENTS OR ENCROACHMENTS NOTED AT THE TIME OF THE INSPECTION. TITLE POLICY WAS NOT REVIEWED BY THE APPRAISER.

**ADDITIONAL FEATURES AND DEPRECIATION COMMENTS:**

THE SUBJECT IS AN AVERAGE QUALITY, THREE STORY, FRAME AND STUCCO, SINGLE FAMILY DWELLING WITH WOOD SIDING ON THE SECOND AND THIRD STORY AND GRAVEL ROOFING. THE THIRD STORY OFFERS A BALCONY WITH OCEAN VIEWS, PERHAPS, OF THE "QUEENS NECKLACE" ITSELF. THE SUBJECT APPEARS TO BE IN AVERAGE CONDITION.

NO EXTERNAL OR FUNCTIONAL OBSOLESCENCE WAS NOTED AT THE TIME OF INSPECTION. PHYSICAL DEPRECIATION IS PRESENT DUE TO THE NATURAL AGING OF THE SUPER STRUCTURE. THIS ANALYSIS IS A DRIVE BY APPRAISAL. ALL DATA IS WHAT CAN BE OBSERVED FROM THE STREET, FROM ASSESSOR RECORDS, MLS, AND LOCAL BROKERS.

**COMMENTS ON THE SALES COMPARISON:**

ALL SALES ARE CLOSED AND VERIFIED AND WERE SELECTED AFTER A DETAILED SEARCH WAS MADE IN THE SUBJECT'S IMMEDIATE MARKETING AREA AND ARE CONSIDERED THE BEST AVAILABLE AT THIS TIME. NO KNOWN SALES CONCESSIONS WERE PAID BY THE SELLERS. ONLY FOUR RECENT SALES WERE FOUND. ONE WAS DROPPED AS A COMPARABLE BECAUSE ITS PROXIMITY TO THE OCEAN PUTS ITS MARKET VALUE BEYOND THAT OF THE SUBJECT. THE REMAINING THREE ARE THE BEST INDICATORS OF PRESENT VALUE.

COMP #1 IS LOCATED ON A DOWNWARD SLOPING LOT THAT IS GATED. A CLEAR VIEW OF THIS IMPROVEMENT WAS OBSCURED, BUT OVERALL, APPEARED TO BE SIMILAR TO THE SUBJECT. A DISTANT OCEAN VIEW WAS NOT DISCERNIBLE. .

COMP 2 WAS OF MEDITERRANEAN DESIGN. ITS QUALITY OF CONSTRUCTION, DESIGN APPEAL, AND CONDITION WERE CLEARLY SUPERIOR TO THAT OF THE SUBJECT.

COMP 3 WAS HIDDEN BEHIND HIGH HEDGE FENCING. HOWEVER, A LIMITED VIEW WAS AVAILABLE THROUGH THE ARCHED GATE PORTAL. IT APPEARED TO BE OF A COLONIAL DESIGN, SUPERIOR IN APPEAL, QUALITY, AND CONDITION TO THAT OF THE SUBJECT.

TO COMPLETE THE ANALYSIS, ADJUSTMENTS MUST BE DERIVED FOR THE ABOVE NOTED DIFFERENCES AND APPLIED WHERE WARRANTED. THE VALUE DIFFERENCE BETWEEN COMP 1 AND THE REMAINING TWO COMPS SHOWS A SIGNIFICANT DIFFERENCE OF AROUND 40% +. THIS DIFFERENCE IN VALUE CAN BE ATTRIBUTED LARGELY TO THEIR SUPERIOR QUALITY OF CONSTRUCTION AND DESIGN. OTHER CONTRIBUTORY DIFFERENCES WOULD BE GROSS BUILDING AREA, LOT SIZE, AND VIEW. LAND VALUE IS CONSIDERED TO HAVE THE LARGEST CONTRIBUTORY VALUE TO IMPROVEMENTS IN THE AREA. COMPARING COMP 2 WITH 3 WE CAN SEE, THAT WHILE COMP 3 IS LARGER THAN COMP 2, IT IS COMP 2 WHICH SOLD AT A HIGHER PRICE. A DIFFERENCE OF ABOUT $250000, MOST OF WHICH IS ATTRIBUTABLE TO COMPS 2'S LARGER LOT SIZE. FROM THIS , A LOT SIZE ADJUSTMENT OF $10 PER SQ FT IS EXTRACTED.

OCEAN VIEW HAS A SIGNIFICANT INFLUENCE ON VALUE IN THIS AREA AS DO QUALITY, APPEAL, SIZE, AND CONDITION. DERIVING AN ADJUSTMENT FOR EACH OF THESE AMENITIES IS A DIFFICULT TASK GIVEN THE LACK OF SUFFICIENT DATA. TO DERIVE THESE ADJUSTMENTS IT IS BEST TO PAIR COMP 1 WITH 2 AND 3. COMP 1 IS SMALLER THAN THE OTHER TWO COMPS BUT HAS THE LARGER LOT SIZE. IT IS ALSO HAS NO VIEW AND IS INFERIOR IN QUALITY, DESIGN, AND CONDITION. THERE IS NO WAY, WITHOUT MORE DATA THAN IS AVAILABLE, TO EXTRACT ADJUSTMENTS FOR EACH OF THOSE INDIVIDUAL FACTORS CONTRIBUTING TO THE PRICE DIFFERENCES BETWEEN COMP 1 AND THE OTHER TWO COMPS. SO , STARTING WITH THE GROSS DIFFERENCE IN VALUE OF 40% BETWEEN COMP 1 AND THE REMAINING COMPARABLES, A PER CENTAGE IS ASSIGNED TO EACH AMENITY CONTRIBUTING TO VALUE. IE. 10% FOR VIEW, 10% FOR QUALITY, 10% FOR CONDITION, AND 5% FOR DESIGN. ( 10% OF $2,000,000 IS $200,000, ETC.) GBA DIFFERENCES ARE ADJUSTED AT $100 PER SQ FT, BATHS ARE ADJUSTED $10000 PER HALF BATH. NO BEDROOM ADJUSTMENTS WERE MADE BECAUSE THE GROSS LIVING AREA ADJUSTMENT IS CONSIDERED SUFFICIENT ADJUSTMENT FOR ANY ROOM DIFFERENCES. AGE ADJUSTMENT NOT MADE. THE SUBJECT AND COMP 2 ARE THE SAME AGE. COMP 3 IS NEWER CONSTRUCTION, BUT COMP 2 SOLD FOR A HIGHER PRICE. AN AGE ADJUSTMENT WAS NOT DISCERNIBLE. POOL ADJUSTMENT IS $45000.

ALL THREE COMPS WERE CONSIDERED IN THE FINAL RECONCILIATION OF VALUE WITH THE FINAL VALUE WEIGHTED HEAVILY TOWARD COMP 1, WHICH IS IN BEST PROXIMITY AND OF MORE SIMILAR QUALITY THAN THE OTHER TWO COMPS. TAKING INTO CONSIDERATION THAT COMP 1 HAS A LARGER LOT, WHILE THE SUBJECT IS GREATER IN SIZE AND HAS A VIEW OF THE OCEAN, AN INTERPOLATED VALUE OF SAY, $2,500,000 IS DERIVED.

THERE ARE NO CONDITIONS OR REQUIREMENTS.

Main Document Page 40 of 44

## Subject Photo Page

| Borrower/Client | RIDLEY,PAMELA | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 28860 SELFRIDGE DR | | | | | | |
| City | MALIBU | County | LOS ANGELES | State | CA | Zip Code | 90265 |
| Lender | PRVT CLIENT | | | | | | |

**Subject Front**

28860 SELFRIDGE DR

| | |
|---|---|
| Sales Price | REFI |
| Gross Living Area | 3,117 |
| Total Rooms | 9 |
| Total Bedrooms | 5 |
| Total Bathrooms | 3 |
| Location | AVERAGE |
| View | OCEAN VIEWS |
| Site | 46,554 Sq.Ft. |
| Quality | AVERAGE |
| Age | 1960 |

**Subject Rear**

**Subject Street**

Form PIC3x5.SR — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

Page 84

## Comparable Photo Page

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Borrower/Client | RIDLEY,PAMELA | | | | | | |
| Property Address | 28860 SELFRIDGE DR | | | | | | |
| City | MALIBU | County | LOS ANGELES | State | CA | Zip Code | 90265 |
| Lender | PRVT CLIENT | | | | | | |

**Comparable 1**

6745 PORTSHEAD RD

| | |
|---|---|
| Prox. to Subject | 0.18 miles |
| Sale Price | 2,025,000 |
| Gross Living Area | 2,599 |
| Total Rooms | 7 |
| Total Bedrooms | 4 |
| Total Bathrooms | 3.5 |
| Location | AVERAGE |
| View | NONE |
| Site | 70,132 |
| Quality | AVERAGE |
| Age | 1973 |

**Comparable 2**

28965 GRAYFOX ST

| | |
|---|---|
| Prox. to Subject | 0.40 miles |
| Sale Price | 3,800,000 |
| Gross Living Area | 3,220 |
| Total Rooms | 7 |
| Total Bedrooms | 3 |
| Total Bathrooms | 3 |
| Location | AVERAGE |
| View | SIMILAR |
| Site | 61,855 |
| Quality | GOOD |
| Age | 1960 |

7022

**Comparable 3**

7022 GRASSWOOD AVE

| | |
|---|---|
| Prox. to Subject | 0.59 miles |
| Sale Price | 3,550,000 |
| Gross Living Area | 3,496 |
| Total Rooms | 10 |
| Total Bedrooms | 5 |
| Total Bathrooms | 5.5 |
| Location | AVERAGE |
| View | SIMILAR |
| Site | 43,560 |
| Quality | GOOD |
| Age | 1992 |

Page 88

Main Document Page 42 of 44

**Plat Map**

| | | | |
|---|---|---|---|
| Borrower/Client | RIDLEY,PAMELA | | |
| Property Address | 28860 SELFRIDGE DR | | |
| City | MALIBU | County LOS ANGELES | State CA Zip Code 90265 |
| Lender | PRVT CLIENT | | |

4466 | 18
2006
SELFRIDGE
DR
PORTSHEAD
RD
WILDLIFE
RD
FERNHILL DR
BONIFACE
DR
RECORD OF SURVEY
R S 56-20-32

Form MAP.PLAT — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

Page 89

Main Document Page 43 of 44

Main File No. 111820-RI Page #12

# Location Map

| Borrower/Client | RIDLEY,PAMELA | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 28860 SELFRIDGE DR | | | | | | |
| City | MALIBU | County | LOS ANGELES | State | CA | Zip Code | 90265 |
| Lender | PRVT CLIENT | | | | | | |

Zumirez Dr
Grayfox St
Bluewater Rd

Form MAP.LOC — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

Page 90

# APPRAISER RESUME

## PERSONAL DATA

| | |
|---|---|
| Name: JAMES W. TANNER | Phone Number: (562) 803-8888 |
| Company Name: TANNER & ASSOCIATES | Fax Number: (562) 803-6855 |
| Address: 9720 WASHBURN AVENUE | Certifications: CRA-1986 |
| DOWNEY, CA 90241 | CERTIFIED GENERAL APPRAISER-09/1992 |
| TANNERJW@AOL.COM | |

## PROFESSIONAL MEMBERSHIPS

NATIONAL ASSOCIATION OF REVIEW APPRAISERS AND MORTGAGE UNDERWRITERS (CERTIFIED REVIEW APPRAISER)

SREA-SOCIETY OF REAL ESTATE APPRAISERS (CANDIDATE MEMBER #547067996)

## EDUCATION

| Name of Institution (HS, College, University, etc.) | Dates Attended | Type of Degree or Certificate |
|---|---|---|
| CALIFORNIA STATE UNIVERSITY NORTHRIDGE | 09/1975-06/1980 | N/A (SENIOR STATUS) |
| | | |
| | | |
| | | |
| **Professional/Technical Courses (Appraisal Related)** | **Date Completed** | **Sponsoring Organization** |
| REAL ESTATE APPRAISAL PRACTICE | 09/1989 | AIREA |
| RESIDENTIAL VALUATIONS | 09/1989 | AIREA |
| BASIC VALUATIONS PROCEDURES | 10/1990 | AIREA @ BIOLA COLLEGE |
| UNIFORM STANDARDS OF PROFESSIONAL PRACTICE | 03/13/1997 | CLIPBOARD SEMINARS |
| COMPLEX APPRAISALS | 02/08/1997-02/09/1997 | REAL ESTATE TRAINERS-SANTA ANA |
| STATS, CAPITAL, PARTIAL INTEREST & REPORTS | 02/10/1997-02/13/1997 | REAL ESTATE TRAINERS-BURBANK |
| UNIFORM STANDARDS OF PROFESSIONAL PRACTICE | 02/21/2005 | NAIFE |
| ELEMENTS OF CA R.E. ESTATE LAWS & REGULATIONS | 06/13/2005 | FELDE PUBLICATIONS AND PROGRAMS |
| APPRAISER'S FINANCE & USPAP COURSE | 03/17/2009 | DYNASTY SCHOOL |
| **Seminars, Conferences, Clinics Attended** | **Date Completed** | **Sponsoring Organization** |
| FHLBB UCIR SEMINAR-UNIC COMM. FORM | 04/1988 | AIREA |
| APARTMENT APPRAISING SEMINAR | 07/14/1988 | AIREA |
| HP 12C FINANCIAL CALCULATOR WORKSHOP | 06-23/1988 | AIREA |
| SINGLE FAMILY RESIDENCE SEMINAR | 05/11/1989 | AIREA @ QUIET CANNON |
| FEDERAL & STATE LAWS AND REGULATIONS | 11/03/1995 | SO CA CHAPT OF APPRAISAL INSTITUTE |
| | | |

## EMPLOYMENT HISTORY

| Employer's Name and Address | Business Title | Dates of Employment | % of Time Dedicated to Appraising |
|---|---|---|---|
| PACIFIC COAST EVALUATIONS | APPRAISER | 12/1980-06/1987 | 100% |
| TANNER & ASSOCIATES | PRESIDENT/APPRAISER | 06/1987-PRESENT | 100% |
| | | | |
| | | | |
| | | | |

## EXPERIENCE SUMMARY

| TYPE | EXISTING CONSTRUCTION | PROPOSED CONSTRUCTION | TYPE | EXISTING CONSTRUCTION | PROPOSED CONSTRUCTION |
|---|---|---|---|---|---|
| Single Family Detached Dwellings | 2000 | 20 | Apartments (21 or more units) | 100 | NONE |
| Condominiums | 600 | NONE | Subdivisions | | |
| Planned Unit Developments | 225 | NONE | Commercial | 300 | NONE |
| Dwelling (2 to 4 living units) | 550 | NONE | Industrial | | |
| Apartments (5 to 20 living units) | 220 | NONE | Land (finished lots, raw land) | 50 | NONE |
| Other | | | Other | See Adden | |

**Number of appraisal report prepared for the following in the past 2 years**

| 1. INSTITUTIONAL INVESTORS | 2. GOVERNMENTAL AGENCIES | 3. PRIVATE MORTGAGE INSURERS |
|---|---|---|
| 1900 | FHA | 300 |

**Briefly describe appraisal review experience:**

I HAVE PERFORMED REVIEW APPRAISALS FOR SEVERAL MAJOR BANKS, MANAGEMENT COMPANIES AND MORTGAGE BANKERS, INCLUDING BUT NOT LIMITED TO LSI,PCV MURCOR, UNIVERSAL BANK AND COMMUNITY COMMERCE BANK.

## APPRAISAL ACTIVITY AREA

**List cities and/or counties in your area of appraisal activity:**

RESIDENTIAL APPRAISALS IN THE FOLLOWING COUNTIES: LOS ANGELES COUNTY, SAN BERNARDINO COUNTY, ORANGE COUNTY, VENTURA AND RIVERSIDE COUNTY. COMMERCIAL APPRAISALS: ALL OF CALIFORNIA.

Form AP2 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE